IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Case No. 07-0007–CR-W-HFS |
| RAYMOND W. ZWEGO, JR., et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This prosecution involves an alleged attempt to defraud a lending agency in connection with the sale of a residence in the Sunset Hill district of Kansas City owned by defendant Katheryn Shields and her husband, Philip Cardarella. The alleged organizer of the fraudulent activity, Raymond Zwego, is accused of creating a falsely inflated selling price by using straw-party buyers (who were not expected to pay the mortgage loan) and a dishonest appraisal. The sellers, Shields and Cardarella, were to receive their asking price of $707,000, while Zwego and his business would pocket in excess of $400,000, most of the difference between the asking price and the inflated sales price of $1,200,000.

Defendant Shields has filed a motion to dismiss, contending that the indictment fails to allege an offense by her.

Shields is named in Count One as a co-conspirator. In the detailed recitation of alleged facts, her husband, Cardarella, was purportedly alerted to the intention to use an unrealistically high sales price some days before the signing of closing papers. Shields is alleged to have signed a "false and fraudulent" document at closing, a "Settlement Statement". That statement, however, accurately

states the price agreed to by the defendant purchasers and the value vouched for by the appraisal. It recites the much lower sum that sellers were willing to receive, and the highly inflated "management fee" to be received by Zwego's company. In essence, therefore, the document was painfully candid rather than dishonest or false.

In its brief in opposition to the motion to dismiss the Government contends the settlement statement is false, however, in that it refers to a sales contract when there was no written contract. The Government also relies on the general allegations that Shields joined the conspiracy at some unspecified time.

The additional charge against Shields is Count 12, a wire fraud charge, alleging use of fax transmissions to consummate a fraudulent plan, and containing an aiding and abetting statutory reference. There is no suggestion that Shields caused to be transmitted any fraudulent documents signed by her. It may be inferred that, as an alleged party to the conspiracy, she is intended by the Government to be held responsible for the misconduct of others who were working to obtain the proceeds of the alleged fraud, in part for her benefit.

I thus agree with defendant that there is nothing materially false or misleading in the Settlement Statement. For one thing, the document Shields signed was not alleged to be intended for the lender, the victim of the scheme, and was not, according to the briefing, actually sent to the intended victim. This makes sense because, if the victim had been alerted to the $707,000 asking price of the sellers, which necessarily reflects the maximum market value opinion of the sellers, one may suppose that a prudent lender would refuse to make a loan greatly in excess of the figure. Transmitting the signed document to the lender would clearly have been counter-productive. It was not part of the fraud allegedly being perpetrated.

2

The Government's contention that there was no "contract" between the sellers and buyers because there was no signed writing is rebutted by the Government's own theory in conspiracy cases that an oral agreement or understanding between the co-conspirators is sufficient. A writing is not needed. In any event, this quibble about a word that the victim was not to see is immaterial as a matter of law. These conclusions do not, however, foreclose a successful prosecution.

The parties have not briefed the aiding and abetting issue, but I do not consider it appropriate to summarily disregard that allegation and rule for defendant. If the Government has adequate proof, beyond a reasonable doubt, that Shields was aware of the inflated price and also that the price was fraudulently established (rather than under some illusion of the buyers or the lender that the property had what might be called "California values") then it would seem she could be convicted of belatedly joining the conspiracy and aiding or abetting the final phase of a known fraud, the division of proceeds.

Defendant Shields argues that the conspiracy had succeeded before her involvement at closing on November 17, 2006. According to the allegations, the intended victim was persuaded and gave tentative approval to loans on October 24, 2006, having been induced by five defendants, but not Shields or Cardarella. Indictment, pp. 10-11. But the alleged conspirators' plan would necessarily continue until the proceeds were received and shared, and Shields had a hand in the planned distribution.

Most obviously, although not pleaded, the signing of a deed by the sellers was necessary to obtain the proceeds. For reasons stated below, I question whether the Government is entitled to use this unpleaded theory in its case, but would leave that to the trial judge.[1]

The pleading requirements in criminal cases go beyond the "notice pleading" that is adequate in civil litigation. Rule 7(c) (1) of the Rules of Criminal Procedure requires "definite" allegations of "facts" constituting the offense charged. While evidentiary details need not be pleaded, the "essential facts" cannot be omitted. Conclusory legalistic pleading will not suffice. Often the law is sufficiently factual in its articulation to allow use of statutory language, but the defendant is entitled to know, quite definitely, what she is accused of doing.

With eleven defendants, and a complex series of alleged misconduct, the Government has attempted to comply with pleading requirements by filing an 18 page indictment. Defendant Shields is named frequently, but vaguely, as an alleged co-conspirator. Her alleged role in misconduct is specified in one place, paragraph 15ii, page 15, where it is said she "knowingly signed false and fraudulent" documents, that is, a "Settlement Statement" and an "Assignment of Proceeds"

The indictment contains no reference to signing a deed, at closing or at some other time. If signing a deed to trigger payment of the loan proceeds is to be characterized as an overt act in aid of the alleged fraud, the reader of the indictment would not be given notice of that contention. No bill of particulars has been requested, to add details concerning the alleged misconduct, but a Supreme Court decision rejects that procedure for supplementing an indictment. Russell v. United

---

[1] Because of family responsibilities at home my availability at the courthouse is currently limited to about five hours daily, including the lunch hour, which is insufficient for jury trials.

4

States, 369 U.S. 749 (1962) (quoted in Wright, Federal Practice and Procedure, Crim. 3d §125, p. 581.)

I note some apparent inconsistency in the Supreme Court rulings. A dissenter in Russell, 369 U.S. at 780, protested against using that ruling in general criminal law practice. Distinctly in point in this case, moreover, is a Nineteenth Century ruling that aiding and abetting can be generally alleged, without advising the defendant of what conduct is referred to. Coffin v. United States, 156 U.S. 432 (1894). That ruling apparently survives under the current Federal Rules. Ellis v. United States, 321 F.2d 931 (9th Cir. 1963); United States v. Martin, 411 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) For present purposes, I accept Coffin and Ellis, and necessarily reject the claim that the indictment fails to allege adequate facts pertaining to aiding and abetting. Since it does not refer to her execution of the deed the trial judge may be pulled in different directions if defendants contend the Stewart opinion in Russell bars use of the unpleaded deed-signing event as part of an aiding and abetting theory.[2]

What is pleaded would probably suffice, for an aiding and abetting case, and therefore also for the conspiracy case (where assisting the final phase of a known conspiracy would create co-conspirator status)–but only if there is adequate proof of knowledge by Shields of fraudulent aspects of the plan. The Settlement Statement, although not itself false or fraudulent, does given written consent to distribution of the proceeds, and this was to be accomplished simply and directly by an Assignment of Proceeds to Zwego's company. This may not "aid" the alleged fraud, in the same way as signing the deed would, but would doubtless qualify as "abetting" any known misconduct

---

[2]I suppose it may be argued that even if the method of aiding and abetting in Count 12 and the list of overt acts in Count 1 need not be pleaded, the prosecutor cannot materially add to what is volunteered in an indictment.

5

of others. If Shields knew the transaction was fraudulent, therefore, I would suppose her documented consent to the distribution in advance of the victim's surrender of the proceeds would create a submissible jury case under the wire fraud count and also the conspiracy count.

The Shields motion to dismiss for failure to state a claim is therefore DENIED, without prejudice to reconsideration on refiling, with further briefing on the issues of aiding and abetting.


                                              /s/ Howard F. Sachs
                                              HOWARD F. SACHS
                                              UNITED STATES DISTRICT JUDGE

May 1, 2007

Kansas City, Missouri